# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH S. TERRILL,<br><br>        Plaintiff,<br><br>   v.<br><br>N. GRANNIS, et al.,<br><br>        Defendants.<br>_____/ | CASE NO. 1:11-cv-00118-AWI-SKO PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION, WITH PREJUDICE, FOR FAILURE TO STATE ANY CLAIMS UNDER SECTION 1983<br><br>(Doc. 11)<br><br>THIRTY-DAY OBJECTION DEADLINE |

**Findings and Recommendations Following Screening of Amended Complaint**

**I.      Screening Requirement and Standard**

Plaintiff Joseph S. Terrill, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on January 24, 2011. On February 22, 2012, the Court screened Plaintiff's complaint and dismissed it, with leave to amend, for failure to state a claim. 28 U.S.C. § 1915A. Plaintiff filed an amended complaint on March 28, 2012.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court is mindful of its obligation toward pro se litigants in civil rights cases, Akhtar v. Mesa, ___ F.3d ___, ___, No. 11-16629, 2012 WL 5383038, at *8 (9th Cir. Nov. 5, 2012), but the sheer possibility that a defendant acted unlawfully is not sufficient and mere consistency with liability falls short of satisfying the plausibility standard, Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.     Discussion**

Plaintiff, who is currently incarcerated at California State Prison-Solano, brings this action against N. Grannis, Chief of the Inmate Appeals Branch; Warden Ken Clark; Correctional Counselor A. Rivera; Correctional Lieutenants D. Snell and R. A. Rodriguez; Appeals Coordinator R. Hall; AGPA L. Zinani;[1] and Correctional Officers P. Ward and Marquez for violating his rights under the United States Constitution while he was incarcerated at California Substance Abuse Treatment Facility and State Prison (CSATF) in Corcoran, California.

---

[1] AGPA is not defined.

2

Plaintiff's six "claims" were previously reviewed by the Court and Plaintiff was provided with notice of the deficiencies and the opportunity to amend.[2] Plaintiff's amended complaint is virtually identical to his original complaint and none of the deficiencies previously identified has been cured. For the reasons which follow, the Court recommends dismissal of this action for failure to state any claims under section 1983.

### A.      Claim 1 - Appeal of Decision to Validate Plaintiff as a Gang Member/Affiliate

#### 1.      Allegations

In his amended complaint, Plaintiff alleges that on May 1, 2008, he filed his second inmate appeal complaining that prison officials had "illegally" labeled him a gang member or affiliate, in violation of prison policy, and seeking the expungement of any gang affiliation references from his central file (c-file). (Doc. 11, Amend. Comp., ¶15.) On June 5, 2008, Plaintiff's appeal was reviewed and denied by Defendant Pratti at the first level of review. (Id., ¶16.) Plaintiff alleges that Defendant Pratti lacked knowledge regarding gang documentation and the procedural safeguards, and that Pratti acted with deliberate indifference when he stated that CDCR (California Department of Corrections and Rehabilitation) had been consistently documenting Plaintiff's suspected gang involvement. (Id.)

On July 23, 2008, Plaintiff's appeal was partially granted at the second level of review by Defendant Gomez in that Gomez ordered the modification of the 128-G chrono to reflect that Plaintiff is a former Crip associate.[3] (Id., ¶18.) Plaintiff alleges that his appeal was in effect denied and Defendant Gomez erroneously determined that CDCR had been documenting Plaintiff's gang involvement. (Id.)

On November 26, 2008, Plaintiff's appeal was denied by Defendant Grannis at the Director's Level of review. (Id., ¶19.)

///

---

[2] Each "claim" is an event or a series of related events giving rise to multiple legal claims. Clarity of the record is best served by maintaining Plaintiff's delineation of the six claims and the Court therefore maintains that format.

[3] A chrono is an informational record.

3

1    Plaintiff alleges that prison officials' failure to follow their own policies and procedures regarding "critical case information" deprived him of the procedural safeguards designed to protect him from arbitrary determinations of gang involvement, and that being labeled with a gang designation results in Plaintiff being punished for any acts committed by gang members or affiliates – which includes being subject to lock-downs and the loss of all privileges. (Id., ¶¶ 21, 22.) Plaintiff denies ever being involved in gangs and he denies being involved in any gang activity in the more than thirty-two years he has been incarcerated. (Id., ¶ 22.) Plaintiff alleges that he was denied notice and an opportunity to be heard regarding being labeled a former Crip associate. (Id.)

### 2.    Eighth Amendment Claim

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992) (citations and quotations omitted). To state a claim for violation of the Eighth Amendment, a prisoner must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to him. E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Plaintiff's amended complaint is devoid of any facts which would support a claim against Defendants Pratti, Gomez, and Grannis for violation of the Eighth Amendment; Plaintiff's allegations demonstrate neither an objectively serious risk of harm nor the requisite subjective mental state. E.g., Farmer, 511 U.S. at 834. Defendants' consideration and denial of Plaintiff's administrative appeal simply does not constitute cruel and unusual punishment. See Myron v. Terhune, 476 F.3d 716, 719 (9th Cir. 2007) (act of classification itself does not amount to infliction of pain).

///

///

### 3.  **Due Process Claim**

As Plaintiff was previously informed in the first screening order, the existence of an administrative appeals process does not create any substantive rights and a due process claim cannot be premised upon Defendants Pratti, Gomez, and Grannis' involvement in considering and resolving Plaintiff's inmate appeal.[4]  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

### B.  **Claim 2 - RVR for Refusal to Take TABE Test and Appeal**

#### 1.  **Allegations**

On June 2, 2008, Plaintiff filed an inmate appeal against Defendant Snell, the senior hearing officer who adjudicated the rules violation report (RVR) issued against Plaintiff for refusal to take the TABE test and found Plaintiff guilty as charged.  (Amend. Comp., ¶24.)  Plaintiff alleges that Defendant Snell abused his authority and violated Plaintiff's procedural and substantive due process rights by failing to document that he postponed the disciplinary hearing twice and held the hearing without Plaintiff present, which deprived Plaintiff of his right to question the reporting employee, present documentation, and address the report discrepancies.  (Id.)

On July 17, 2008, Defendant Fisher, Jr. interviewed Plaintiff at the first level of review, and Plaintiff expressed concern over Fisher's ability to render an impartial decision concerning an appeal issue that involved his friend of more than twenty years.  (Id., ¶25.)  Defendant Fisher, Jr. thereafter "inexplicably" ruled against Plaintiff and found no due process violation had occurred with the disciplinary hearing.  (Id.)

Plaintiff pursued the appeal to the next level, where it was denied on September 12, 2008, by Defendant Allison on behalf of Defendant Clark.  (Id., ¶¶26, 27.)  Plaintiff then filed the appeal at the Director's Level of review, where is was denied by Defendant Grannis on January 7, 2009. (Id.)

///

---

[4] As noted in the first screening order, Plaintiff is not seeking to impose liability on those who validated him.

5

**2.     Due Process Claims**

      **a.     Defendants Fisher, Jr., Clark, Allison, and Grannis**

Defendants Fisher Jr., Clark, Allison, and Grannis's actions in reviewing and denying Plaintiff's inmate appeal provide no basis for imposing liability on them under section 1983. Ramirez, 334 F.3d at 860; Mann, 855 F.2d at 640.

      **b.     Defendant Snell**

Plaintiff was charged with and found guilty by Defendant Snell of refusing to take the TABE test. (Amend. Comp., Ex. B, court record p. 56.) As punishment, Plaintiff was assessed a thirty-day time credit forfeiture and a ninety-day loss of Friday visitation, and he was counseled about his conduct. (Id.)

      **1)     Procedural Claim**

          **a)     Protected Liberty Interest**

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). To state a claim, Plaintiff must first identify the interest at stake. Wilkinson, 545 U.S. at 221. Liberty interests may arise from the Due Process Clause or from state law. Id. The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, id. at 221-22 (citations and quotation marks omitted), and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue, id. at 222-23 (citing Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995)) (quotation marks omitted). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Wilkinson, 545 U.S. at 221 (citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron, 476 F.3d at 718.

          **b)     Procedural Protections Due**

If a protected interest is identified, the inquiry then turns to what process is due. Wilkinson, 545 U.S. at 224. Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. Wolff v. McDonnell, 418

6

1 U.S. 539, 556, 94 S.Ct. 2963 (1974) (quotation marks omitted). The minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated in part by Sandin, 515 U.S. at 483-84.

### c) Effect of Favorable Termination Rule

It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a section 1983 action and their sole remedy lies in habeas corpus relief. Wilkinson v. Dotson, 544 U.S. 74, 78, 125 S.Ct. 1242 (2005). Often referred to as the favorable termination rule, this exception to section 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." Wilkinson, 544 U.S. at 81. Thus, "a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81-2.

### d) Findings

In this instance, there is no factual support for a finding that a ninety-day loss of Friday visitation and behavioral counseling constitute atypical and significant hardship in relation to the ordinary incidents of prison life, and therefore, the Court finds no protected liberty interest was at stake. Wilkinson, 545 U.S. at 221; Sandin, 515 U.S. at 484; Myron, 476 F.3d at 718.

///

With respect to the time credit loss, Plaintiff was previously advised that a loss of time credits necessarily affects the length of his sentence and a finding that his due process rights were violated with respect to his disciplinary hearing would imply the invalidity of the hearing disposition and resulting credit loss. Plaintiff's amended complaint sets forth no additional or different facts which suggest that the favorable termination rule does not bar his claim. Accordingly, the Court recommends that Plaintiff's due process claim against Defendant Snell be dismissed with prejudice as to the visitation and counseling and without prejudice as to the credit loss. Wilkinson, 544 U.S. at 81-2.

### 2) Substantive Claim

The touchstone of due process is protection of the individual against arbitrary government action, whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective. County of Sacramento v. Lewis, 523 U.S. 833, 845-46, 118 S.Ct. 1708 (1998) (quotation marks and citations omitted). However, "[t]here is no general liberty interest in being free from capricious government action," Nunez v. City of Los Angeles, 147 F.3d 867, 873 (9th Cir. 1998) (citation omitted), and to state a substantive due process claim, Plaintiff must demonstrate the deprivation of a protected interest and conscience shocking behavior by the governmental actor, Brittain v. Hansen, 451 F.3d 982, 991 (9th Cir. 2009).

The existence of protected liberty interest is addressed in the preceding section, and the events at issue here do not support a claim based on conscience shocking behavior. Accordingly, Plaintiff's substantive due process claim is not cognizable.

### C. Claim 3 - RVR for Disruptive Behavior and Appeal

#### 1. Allegations

Plaintiff was charged with disruptive behavior in relation to a prison dental visit, and the second disciplinary hearing held on October 23, 2008, is subject to Claim 4, discussed below. Claim 3 involves the first, "illegal" disciplinary hearing conducted by Defendant Rodriguez on October 12, 2008, during which Rodriguez allegedly ordered Defendants Ward and Marquez to use physical force against Plaintiff. (Amend. Comp., ¶32, 33.) On October 22, 2008, Plaintiff filed an inmate

appeal complaining about the incident, and his appeal was partially granted at the first and second levels of review by Defendant Fisher, Jr. and Defendant Allison, respectively, who stated that an inquiry had been conducted and staff did violate prison policy. (Id., ¶¶35-37.) At the Director's Level of review, Plaintiff's appeal was denied, in contradiction of the lower-level decisions. (Id., ¶38-40.)

### 2. Due Process Claims

#### a. Defendant Grannis

Plaintiff may not seek to impose liability on Defendant Grannis based on her involvement in reviewing and denying his inmate appeal at the Director's Level of review; Plaintiff has no protected interest in the outcome of his appeal. Ramirez, 334 F.3d at 860; Mann, 855 F.2d at 640.

#### b. Defendant Rodriguez

To the extent that Plaintiff is attempting to pursue a due process claim against Defendant Rodriguez, Plaintiff has not demonstrated the existence of any protected liberty interest and in the absence of such an interest, Plaintiff may not pursue a claim. Wilkinson, 545 U.S. at 221-23. Plaintiff was notified of this deficiency in the first screening order and his amended complaint contains no new factual material identifying a protected interest.

### 3. Equal Protection Claim

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Although Plaintiff alleges that his right to equal protection was violated by Defendant Grannis, his amended complaint is devoid of any facts supporting such a claim.

### 4. Eighth Amendment Claims

#### a. Excessive Force

Plaintiff alleges that Defendant Rodriguez ordered Defendants Ward and Marquez to use physical force against him, but neither his amended complaint nor his inmate appeal sets forth any facts which would support a claim that Defendants were involved in violating his rights under the Eighth Amendment. Wilkins v. Gaddy, ___ U.S. ___, ___, 130 S.Ct. 1175, 1178 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 8-9, 112 S.Ct. 995 (1992). (Amend. Comp., ¶¶32-33; Ex. C, court record pp. 77-79.) *De minimis* uses of physical force are necessarily excluded from constitutional recognition, so long as the force is not of a sort repugnant to mankind, and while Plaintiff's dignity may have been offended, neither Defendant Ward's action in grabbing Plaintiff's arm nor Defendants Ward and Marquez's actions in physically restraining Plaintiff and escorting him to his cell will support a claim for the use of malicious and sadistic force. Wilkins, ___ U.S. at ___, 130 S.Ct. at 1178; Hudson, 503 U.S. at 9-10.

#### b. Deliberate Indifference to Risk of Harm

Plaintiff alleges that Defendants Rodriguez, Ward, and Marquez's actions constituted deliberate indifference to a substantial risk of harm by placing him in a "precarious" position. (Amend. Comp., ¶34.) However, Plaintiff's amended complaint is devoid of any facts which would support an Eighth Amendment conditions-of-confinement claim arising out of the disciplinary proceedings. (Id., ¶¶32-34; Ex. C, court record pp. 77-79.) Present was neither an objectively serious risk of harm to Plaintiff nor subjective deliberate indifference. E.g., Farmer, 511 U.S. at 847; Hudson, 503 U.S. at 9.

///
///
///
///
///

1 **D.    Claim 4 - RVR for Disruptive Behavior and Appeal**

**1.    Allegations**

Plaintiff was charged with disruptive behavior in relation to a prison dental visit, and Defendant Snell conducted the disciplinary hearing on October 23, 2008.[5] (Amend. Comp., Ex. D, court record pp. 93-97.) Plaintiff alleges that on November 13, 2008, he filed an inmate appeal complaining that Defendant Snell was prohibited from holding the hearing because a conflict of interest existed due to the appeal Plaintiff previously filed against Snell relating to the RVR for refusing to take the TABE test. (Id., ¶41.) Plaintiff alleges that Defendant Snell retaliated against him for engaging in protected conduct, in contravention of prison policy, which prohibits reprisals. (Id., ¶42.)

Plaintiff alleges that the appeal was inappropriately screened out and he sent a formal notice to Defendant Zinani, who responded by sending another screening notice threatening to cancel Plaintiff's appeal for lack of cooperation. (Id., ¶43.) Plaintiff then sent a notice to Defendant Clark concerning the appeals coordinators' refusal to allow him to submit supporting documentation. (Id., ¶44.) In response, Defendant Hall sent a notice informing Plaintiff that his appeal constituted an abuse of the appeals process and threatening to cancel the appeal. (Id., ¶45.)

Plaintiff alleges that Defendants Zinani and Hall prevented him from presenting crucial information in support of his appeal, and their actions were retaliatory. (Id., ¶46.)

On February 6, 2009, Plaintiff received a summary denial of his appeal by Defendant Hall. (Id., ¶47.) Plaintiff alleges that the issues he raised required the appeals coordinator to vacate the disciplinary decision but Defendant Hall failed to do so. (Id.) Defendant Grannis thereafter denied Plaintiff's appeal at the Director's Level of review. (Id., ¶48.)

**2.    Retaliation Claim**

While filing grievances is an activity protected by the First Amendment and prison officials may not retaliate against inmates for exercising this right, Plaintiff's conclusory allegations of retaliation fall well short of stating a claim. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

---

[5] RVR B-08-09-031.

11

Plaintiff's amended complaint contains no factual support for his claim that Defendants Snell, Zinani, and Hall took adverse action against him *because of* his engagement in protected activity. Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009); Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The appeals decisions at issue do not support Plaintiff's claim that he was threatened for engaging in protected conduct.  Rather, Plaintiff's appeals were screened out twice, via boilerplate language, for procedural deficiencies and not because of the substance of his appeal or for any other reason that appears suspect on its face, and in addition, Plaintiff was permitted to resubmit the appeal with the requested corrections.  But cf., Brodheim, 584 F.3d at 1271 (inmate warned about the word choices in his appeal, later followed by the issuance of a memorandum recommending that he be considered for possible transfer).  (Amend. Comp., Ex. D, court record pp. 98, 102.)  The "threat" described by Plaintiff was merely the boilerplate warning, "Failure to follow these directions may result in your appeal being cancelled due to lack of cooperation."  (Id., pp. 98, 102.)  Given Plaintiff's allegations and exhibits, the Court can find no support for a plausible claim that Plaintiff was retaliated against because of his engagement in protected conduct.

### 3. **Eighth Amendment Claim**

Although Plaintiff alleges that Defendant Hall acted with deliberate indifference to a substantial risk of harm, there are no facts alleged which suggest the existence of an objectively serious risk of harm or of subjective deliberate indifference by Defendant Hall. E.g., Farmer, 511 U.S. at 847; Hudson, 503 U.S. at 9.

### 4. **Due Process Claims**

As previously stated, Plaintiff may not pursue a due process claim based on his dissatisfaction with the handling of his inmate appeals. Ramirez, 334 F.3d at 860; Mann, 855 F.2d at 640. With respect to the disciplinary hearing, Plaintiff was found guilty of disruptive behavior and as punishment, he lost thirty days of time credits, ninety days of Friday visitation, and sixty days of yard privileges, and he was assessed forty hours of extra duty. (Amend. Comp., Ex. D, court record p. 96.)

///

1   The short-term loss of Friday visitation and yard privileges and the short-term assessment
2   of extra duty do not, on their face, constitute atypical and significant hardship in relation to the
3   ordinary incidents of prison life, and in the absence of a protected liberty interest, no procedural due
4   process claim may lie. Wilkinson, 545 U.S. at 221; Sandin, 515 U.S. at 484.

5   Furthermore, state regulations do not determine the procedural protections to which Plaintiff
6   is due under federal law and notwithstanding the failure to identify the existence of a protected
7   liberty interest, Plaintiff's proclamation that Defendant Snell was prohibited from conducting the
8   disciplinary hearing due to a conflict of interest does not support a claim that he was deprived of the
9   minimal procedural protections he was due. Wolff, 418 U.S. at 563-71. (Amend. Comp., ¶41.)

10  With respect to the time credit loss, assuming without deciding that Plaintiff has a liberty
11  interest in avoiding the revocation of earned time credits, he has not demonstrated he was denied the
12  protections he was due under federal law and his due process claim is barred in any event by the
13  favorable termination rule. Wilkinson, 544 U.S. at 81-2.

### 5. Equal Protection Claim

15  Although Plaintiff alleges that Defendant Grannis violated his right to equal protection, his
16  amended complaint sets forth no facts which would support a claim that she intentionally treated him
17  differently than other similarly situated inmates. E.g., Olech, 528 U.S. at 564; City of Cleburne, 473
18  U.S. at 439; Comm. Concerning Cmty. Improvement, 583 F.3d at 702-03; Lazy Y Ranch Ltd., 546
19  F.3d at 592; Serrano, 345 F.3d at 1082.

### E. Claim 5 - Problems with Appeals Office

#### 1. Allegations

22  Plaintiff alleges that on February 19, 2009, he submitted his fifth inmate appeal to Defendant
23  Clark's office, designated as confidential mail. (Amend. Comp., ¶52, Ex. E, p. 117.) In the appeal,
24  Plaintiff complained about Defendant Hall and asserted that Hall abused his authority and retaliated
25  against inmates who filed appeals against staff by arbitrarily screening out appeals and by failing to
26  comply with prison policy. (Id.) Plaintiff alleges that Defendant Clark failed to forward the appeal
27  to the proper authority for processing and exhaustion, and it was screened out by Defendant Zinani
28  on February 24, 2009, purportedly because it contained issues duplicative to those which were

previously decided or were still pending. (Id., ¶¶54, 56; Ex. E, p. 120.) Plaintiff alleges that Defendant Zinani also included another party's Director's Level decision, which had no relevancy to his appeal. (Id., ¶56.)

Plaintiff alleges that staff at CSATF employed an "illicit policy of arbitrarily screening out" inmate appeals using policy as a pretext, and that such actions by Defendants Hall and Zinani were retaliatory and interfered with Plaintiff's right to seek redress from the government via the inmate appeals process. (Id., ¶55.)

On March 9, 2009, Plaintiff resubmitted his inmate appeal to Defendant Clark's office along with his explanation why he was pursuing relief against Defendant Hall, and he again designated it as confidential mail. (Id., ¶57, Ex. E, pp. 123-24.)

Plaintiff alleges that Defendants Hall and Zinani retaliated against him, and Defendant Clark was obligated to protect him from harm and to forward his appeal to the appropriate authority. (Id., ¶¶58-61.)

### 2. Retaliation Claim

Plaintiff's allegations do not support a claim that Defendants Hall and Zinani retaliated against him for exercising his First Amendment right to seek redress from the government. Plaintiff's disagreement with how his appeals were handled, including but not limited to their processing and screening, is insufficient to support a claim that Defendants took adverse action against him because of his engagement in filing appeals. Brodheim, 584 F.3d at 1269; Rhodes, 408 F.3d at 567-68.

### 3. Eighth Amendment Claim

Although Plaintiff alleges that Defendants acted with deliberate indifference to a substantial risk of harm, there are no facts alleged which suggest the existence of an objectively serious risk of harm or that Defendants knowingly disregarded any such risk. E.g., Farmer, 511 U.S. at 847; Hudson, 503 U.S. at 9.

### 4. Due Process Claim

Plaintiff may not base a due process claim on the handling of his inmate appeal. Ramirez, 334 F.3d at 860; Mann, 855 F.2d at 640.

F.   **Claim 6 - Ad-Seg Placement, Prison Transfer, and Appeal**

   1.   **Allegations**

Finally, Plaintiff alleges that on March 27, 2009, at approximately 11:45 a.m., he was summoned to the program office, placed in a holding cage, and told only that an order to lock him up in administrative segregation (ad-seg) had been issued. (Amend. Comp., ¶62.) At approximately 12:15 p.m., Defendant Rivera entered the room and Plaintiff asked why he was being held in the cage and with what infraction he was being charged. (Id., ¶63.) Defendant Rivera did not know but said he would find out. (Id.) Five minutes later, Defendant Rivera returned and told Plaintiff that the lock-up order had been issued based on a 1975 escape which had been found in Plaintiff's file. (Id.) Plaintiff responded that the so-called escape was just an excuse for locking him up and the action was from the top to retaliate against him for the numerous complaints he filed. (Id.)

Defendant Rivera returned at approximately 1:20 p.m. and told Plaintiff that they found a second escape in his c-file and he was going to be placed in ad-seg. (Id., ¶64.) Defendant Rivera said he knew Plaintiff did not want to be in the hole for months without his property and he asked if Plaintiff would be willing to sign a 128-B chrono if he drafted one. (Id.) Plaintiff agreed. (Id.)

At approximately 2:50 p.m., Plaintiff received a copy of the lock-up order issued by Defendant Snell, which stated that on March 26, 2009, Plaintiff's case was presented to the CSR (classification services representative) for transfer review. (Id., ¶65.). It was determined that Plaintiff met the criteria for Close B custody, which meant he could not be appropriately housed at CSATF and he posed a threat to the safety and security of the institution. (Id.)

On March 28, 2009, Plaintiff appeared before the unit classification committee for an initial classification review following his transfer from CSATF to California State Prison-Corcoran (CSP). (Id., ¶67.) Plaintiff alleges that the committee's actions violated classification procedures and he "rejects" the reference to a pre-classification/pre-conference interview. (Id.)

On April 3, 2009, Plaintiff appeared before the institutional classification committee (ICC) for a hearing and he alleges that he was deprived of his "fundamental rights relative to the classification hearing process involving adverse actions." (Id., ¶66.) Plaintiff alleges that the ICC based its adverse decision on erroneous information in his c-file regarding an escape and on evidence

manufactured by Defendant Rivera. (Id.) Plaintiff alleges that he was "irreparably harmed" by the committee's decision to place him on permanent Close B custody status and transfer him adversely to CSP. (Id.)

On June 17, 2009, Plaintiff filed his sixth inmate appeal, in which he alleged that prison officials at CSATF retaliate against him for exercising his right to file grievances. (Id., ¶68.)

Plaintiff alleges that Defendant Rivera acted in complicity with the actions of CSATF prison officials and his action contributed significantly to Plaintiff's injury in that he manufactured evidence while pretending to help Plaintiff and the ICC relied upon that evidence to justify its actions. (Id., ¶69.) Plaintiff alleges that Defendant Rivera acted to retaliated against him for engaging in protected conduct. (Id.)

Plaintiff alleges that Defendant Clark had an affirmative duty to protect Plaintiff, his silence does not absolve him of liability, he was fully aware of all events, and he violated Plaintiff's rights to seek redress without being retaliated against and to equal protection of the laws. (Id., ¶70.)

Plaintiff alleges that he submitted his inmate appeal to the Director's Level of review on August 20, 2009, and it was denied on November 12, 2009. (Id., ¶¶71, 72.) Plaintiff alleges that Defendant Grannis violated his First and Fourteenth Amendment rights by issuing an erroneous decision and denying him a fair, impartial, adequate process for his grievances. (Id., ¶¶72-75.)

**2.   Retaliation Claim**

Plaintiff's amended complaint contains no facts supporting a claim that Defendants violated his rights under the First Amendment taking adverse action against him because of his engagement in protected conduct. Brodheim, 584 F.3d at 1269; Rhodes, 408 F.3d at 567-68.

**3.   Eighth Amendment Claim**

Plaintiff's amended complaint sets forth no facts which support a claim that Defendants acted with deliberate indifference to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Hudson, 503 U.S. at 9.

**4.   Due Process Claims**

Defendants Clark and Grannis's involvement in reviewing and/or resolving his inmate appeal does not support a due process claim. Ramirez, 334 F.3d at 860; Mann, 855 F.2d at 640.

16

1   With respect to Plaintiff's placement in ad-seg and transfer to CSP-Corcoran, Plaintiff has
2   alleged no facts demonstrating he was deprived of a protected liberty interest and his claim fails as
3   a matter of law. Wilkinson, 545 U.S. at 221-23; Myron, 476 F.3d at 718.

        **5.     Equal Protection Claim**

5   Finally, Plaintiff's amended complaint is devoid of any facts supporting a claim that
6   Defendants intentionally treated him differently from other similarly situated inmates. E.g., Olech,
7   528 U.S. at 564; City of Cleburne, 473 U.S. at 439; Comm. Concerning Cmty. Improvement, 583
8   F.3d at 702-03; Lazy Y Ranch Ltd., 546 F.3d at 592; Serrano, 345 F.3d at 1082.

**III.    Conclusion and Recommendation**

10   The Court has screened Plaintiff's amended complaint and finds that it fails to state any
11  claims upon which relief may be granted under section 1983. With the exception of the equal
12  protection theory, Plaintiff was previously given notice of the deficiencies in his claims and the
13  opportunity to amend. Rather than curing any of the deficiencies, Plaintiff filed an amended
14  complaint which is virtually identical to his original complaint, save for a few minor deletions and
15  additions, including the assertion that his factual allegations also support a claim for denial of equal
16  protection. Based on the nature of Plaintiff's allegations and the deficiencies at issue, further leave
17  to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) ; Noll v. Carlson,
18  809 F.2d 1446, 1448-49 (9th Cir. 1987).

19   Accordingly, it is HEREBY RECOMMENDED that this action be DISMISSED for failure
20  to state any claims under section 1983, without prejudice as to any due process credit loss claims
21  barred by the favorable termination rule and with prejudice as to all other claims.

22   These Findings and Recommendations will be submitted to the United States District Judge
23  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30)**
24  **days** after being served with these Findings and Recommendations, Plaintiff may file written
25  objections with the Court. The document should be captioned "Objections to Magistrate Judge's
26  Findings and Recommendations." Plaintiff is advised that failure to file objections within the
27  ///
28  ///

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 21, 2012**                              /s/ Sheila K. Oberto
                                                                             UNITED STATES MAGISTRATE JUDGE